# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHT CIRCUIT

---

## NO. 13-3346

---

BRANDON SCROGGIN, PRO SE APPELLANT

VS.

CREDIT BUREAU OF JONESBORO, INC.,   APPELLEE

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

THE HONORABLE SUSAN WEBBER WRIGHT
UNITED STATES DISTRICT JUDGE

ORIGINAL CASE NO. 3:12CV-000128

# PRINCIPAL BRIEF OF APPELLEE,
# CREDIT BUREAU OF JONESBORO, INC.

Donn Mixon (76079)
Rebecca Worsham (2009260)
P.O. Box 1442
Jonesboro, Arkansas 72403
870.935.8600
Fax 870.935.8622
dmixon@mixonlawfirm.com
rworsham@mixonlawfirm.com

Submitted on March 31, 2014.

## Summary of the Case

This case has never been about vindicating important consumer rights pursuant to the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.§1692et seq. .Appellant Brandon Scroggin (Scroggin) did not bring this suit because he was a victim of abusive debt practices. He brought this suit in revenge against all debt collectors by successfully soliciting an FDCPA violation from Appellee Credit Bureau of Jonesboro, Inc. (CBJ). Scroggin then setup CBJ to make a third party disclosure. Scroggin sued CBJ for violating the FDCPA and the Arkansas Fair Debt Collection Practices Act (AFDCPA), Ark. Code Ann. § 17-24-501 et seq. Throughout this lawsuit, Scroggin has posted about this case online. Scroggin's conduct and the contents of his online postings show that he manipulated the FDCPA to harass CBJ, its counsel and entertain his online followers. At trial, over 6,500 of Scroggin's online posts were admitted into evidence. The jury found that CBJ made two violations of the FDCPA and AFDCPA. The jury awarded Scroggin zero damages and found that he brought this action in bad faith. CBJ moved for its attorney's fees and costs based upon Scroggin's vexatious litigation conduct. The district court saw through Scroggin's scheme and granted CBJ's motion. The district court's order should be affirmed. CBJ does not believe oral argument is necessary, but will honor this Court's decision in regards to granting an oral argument.

**<u>Corporate Disclosure Statement</u>**

Pursuant to Fed. R. App. P. 26.1 and Eighth Circuit Local Rule 26.1A, Appellee Credit Bureau of Jonesboro, Inc. ("CBJ") certifies that it is a private corporation organized under the laws of the State of Arkansas. CBJ further certifies that it has no parent corporation and that no publicly-held corporation owns 10% or more of its stock.

3

Appellate Case: 13-3346     Page: 3     Date Filed: 04/02/2014 Entry ID: 4140204

# **Table of Contents**

Summary of the Case…………………………………………………….....2

Corporate Disclosure Statement……………………………………………3

Table of Contents……………………………………………….......4

Table of Authorities……………………………………………….......7

Jurisdictional Statement……………………………………..……………10

Statement of the Issues………………………………………...…11

Statement of the Case………………………………………….....12

Summary of the Argument…………………………………….......15

Introduction…………………………………………………………16

Argument……………………………………………………………18

I.    The District Court did not abuse its discretion in finding that Scroggin brought this action in bad faith and for the purpose of harassment……....18

    1.    Standard of Review……………………………………………18

    2.    Defining Bad Faith…………………………...……………...19

    3.    Scroggin abused the FDCPA by successfully soliciting an FDCPA violation by drafting an ambiguous "refusal to pay" letter…………………………………………...……20

    4.    Scroggin attempted to increase his actual damages claim by conveniently setting up CBJ to make a third-party disclosure……....23

    5.    Scroggin was the only party that engaged in abusive and harassing conduct throughout this litigation………………….…...26

    6.    Scroggin attempted to make a mockery of CBJ's deposition……....28

Appellate Case: 13-3346     Page: 4     Date Filed: 04/02/2014 Entry ID: 4140204

7.      Scroggin purposely harassed CBJ's counsel after the deposition…...31

8.      Scroggin only hired an attorney to gain attorney's fees for himself...33

II.    The District Court did not abuse its discretion in awarding CBJ
its attorney's fees and costs pursuant to 15. U.S.C. § 1692k (a)(3)
and Ark. Code Ann. § 17-24-512(a)(3)(B). …………………………………..36

    1.    Standard of Review……………………………………..…………...36

    2.    Argument……………………………………………….……..36

        A.    Scroggin was not entitled to collect his own
attorney's fees and costs…………………………….……..37

        B.    Since Scroggin failed to enforce the foregoing liability
under§1692k(a)(3), he is not a prevailing party………..……..38

        C.    Bad faith and Harassment for purposes of §1692k(a)(3)…….…41

III.   The District Court did not abuse its discretion by alternately awarding
CBJ its attorney's fees and costs pursuant to its inherent authority………..44

    1.    Standard of Review……………………………………………….44

    2.    Argument………………………………………………...…45

        A.    §1692k(a)(3) does not restrict a Court's Inherent Authority…45

        B.    The Court's inherent power to award attorney's fees and
costs does not depend upon which party prevails……………47

        C.    Scroggin's Free Speech Rights were not violated…………..47

Appellate Case: 13-3346   Page: 5   Date Filed: 04/02/2014 Entry ID: 4140204

IV.     The District Court did not err by alternatively awarding CBJ its accrued costs from the time it made Scroggin an Offer of Judgment pursuant to Fed. R. Civ. P. 68………..…………………………………………….………..50

    1.     Standard of Review……..……………………………….………..50

    2.     Federal Rule of Civil Procedure 68……………………….………...50

    3.     CBJ's offer of judgment was not a "sham offer."…………….…...51

Conclusion…………………………………………………………….…..52

Certificate of Compliance……………………………………………........53

6

## <u>Table of Authorities</u>

*Cases:*

*Adams v. Ford Motor Co*.
     653 F.3d 299, 307 (3rd Cir. 2011)………………………………………….19

*Buckhannon Bd. & Care Home, Inc. v.*
*West Virginia  Dept. of Health & Human Resources,*
     532 U.S. 598, 603-04 (2001)……………………………………..…….11, 39

*Chambers v. Nasco, Inc.,*
     501 U.S. 32, 45-46 (1991)………………….…….…………....…11, 45

*Crabill v. Trans Union, LLC*.,
     259 F.3d. 662, 666 (7th Cir. 2001)……………………………....…….38

*Dechert v. Cadle Co.,*
     441 F.3d 474, 475 (7th Cir. 2006)………..……………………….38-39

*DocMagic, Inc. v. Mortgage Partnership of America,*
     729 F.3d 808 , 812 (8th Cir. 2013)……………………………..…..…36

*Gozlon-Peretz  v. United States,*
     498 U.S. 395, 404 (1991*)*…………………………………………….40-41

*Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Wa Inc*.,
     715 F.3d 1196, 1201 (9th Cir. 2013)……………………….…………19

*Horkey v. JVDB & Associates, Inc.,*
     333 F. 3d 769 (7th Cir. 2003)……………………………....…..…41-42

*Jacobson v. Healthcare Financial Services, Inc.,*
     516 F. 3d 85 (2nd Cir. 2008)……………………………….……...42-43

*Jermain v. Carlisle*
     130 S. Ct. 1605, 1631 (2010)…………………………………....11, 34-35

*Johnson v. Eaton,*
     80 F. 3d 148 (5th Cir. 1996)……………………………………..37-38, 40

Appellate Case: 13-3346    Page: 7    Date Filed: 04/02/2014   Entry ID: 4140204

*Lamb Engineering & Const. v. Nebraska Public Power,*
103 F.3d 1442 (8th Cir. 1997). …………………………………….……47

*Lee v. First Lenders Ins. Servs., Inc.,*
236 F.3d 443, 445 (8th Cir. 2001)…………………….………....18-19, 44

*Link v. Wabash R.R.,*
370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)…….…….…..45

*Marx v. General Revenue Corp.,*
— U.S. —, 133 S.Ct. 1166, 1175-76 (2013)………………………11, 45-46

*McLarty v. United States*,
6 F.3d 545, 549 (8th Cir.1993)………………………………….…………47

*Parker v. Pressler & Pressler, LLP,*
650 F.Supp.2d 326, 347  (D.N.J. 2009))…………………………....…43

*Perkins v. US West Communications*,
138 F. 3d 336, 338 (8th Cir. 1998)………………………..…………11, 50-51

*State Auto Property and Cas. Ins. Co. v. Swaim,*
338 Ark. 49, 56, 991 S.W.2d 555, 559 (1999)……………………..……19

*Stevenson v. Union Pac. R.R. Co.,*
354 F.3d 739, 745 (8th Cir. 2004)……………………………….…..18, 44

*Valez v. Portfolio Recovery Associates, Inc.,*
881 F.Supp.2d 1075, 1086 (E.D. Mo. 2012)……………….…………43

*Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.,*
682 F.3d 1091, 1095 (8th Cir. 2012)…………..…………………………..45

*Willhite v. Collins*,
459 F. 3d 866, 869 (8th Cir. 2006)……………..…………..…18-19, 44

Appellate Case: 13-3346    Page: 8    Date Filed: 04/02/2014 Entry ID: 4140204

***Statutes***

Arkansas Fair Debt Collection Practices Act
Ark. Code Ann. § 17-24-501 et seq……………………………………......passim
Ark. Code Ann. § 17-24-504 (b)…………………………………...………………..23
Ark. Code Ann. § 17-24-504 (c)……………………………………………………..20
Ark. Code Ann. § 17-24-512 (a)(3)(A)……………………………………………..37
Ark. Code Ann. § 17-24-512(a)(3)(B)………………………………….……passim

Fair Debt Collection Practices Act
15 U.S.C. § 1692 et seq………………………………………………….passim
15 U.S.C. § 1692c (b)……………………………………………………13, 23
15 U.S.C. § 1692c (c)……………………………………………………12, 20
15 U.S.C. § 1692g (a)………………...…………………………………………...21
15 U.S.C. § 1692g (b)……………………………...………………………………...21
15 U.S.C. § 1692k (a)(3)………………………………………………………passim

***Rules***

Fed. R. Civ. P. 68………………………….…………………………....11, 50-52

Fed. R. Evid. 801(d)(2)……………………….……….……………...……14, 48

***Other Resources***

Arkansas Model Jury Instructions–Civil § 403 (2013)………………….……..19

Black's Law Dictionary 159 (9th ed. 2009)…………………….…………...…19

Webster's New Collegiate Dictionary 522 (ed. 1977)…………………...…….19

Appellate Case: 13-3346    Page: 9    Date Filed: 04/02/2014 Entry ID: 4140204

## Jurisdictional Statement

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692 et seq. The plaintiff timely filed a notice of appeal on October 18, 2013 from the district court's final order entered on September 20, 2013. This court has jurisdiction under 28 U.S.C. § 1291.

Appellate Case: 13-3346    Page: 10    Date Filed: 04/02/2014 Entry ID: 4140204

## **Statement of Issues**

1.  Did the District Court abuse its discretion in finding that Scroggin

    brought this action in bad faith and for the purpose of harassment?

    *Chambers v. Nasco, Inc*., 501 U.S. 32 (1991)

2.  Did the District Court abuse its discretion in awarding CBJ its attorney's

    fees and costs pursuant to 15. U.S.C. § 1692k (a)(3) and

    Ark. Code Ann. § 17-24-512(a)(3)(B)?

    *Buckhannon Bd. & Care Home, Inc. v. West Virginia  Dept. of Health &*

    *Human Resources*, 532 U.S. 598, 603-04 (2001)

    *Jermain v. Carlisle*, 130 S. Ct. 1605, 1631 (2010)

    *Marx v. General Revenue Corp*.,133 S.Ct. 1166 (2013)

3.  Did the District Court abuse its discretion by invoking its inherent authority

    as an alternative basis to award CBJ its attorney fees and costs?

    *Chambers v. Nasco, Inc*., 501 U.S. 32,(1991).

    *Marx v. General Revenue Corp*.,133 S.Ct. 1166 (2013)

4.  Did the District Court err by awarding, in the alternative, CBJ its accrued

    costs from the time it made Scroggin an Offer of Judgment pursuant to

     Fed.  R. Civ. P. 68?

    *Perkins v. US West Communications*, 138 F. 3d 336, 338 (8th Cir.1998).

11

# **Statement of the Case**[1]

On May 25, 2012, Scroggin filed his second FDCPA lawsuit arising from medical services he received from St. Bernard's Medical Center (St. Bernard's) in Jonesboro, Arkansas.[2]

Since Scroggin failed to pay for those medical services, his account was assigned to CBJ for collection.[3] Pursuant to its normal procedure, CBJ sent Scroggin its initial communication letter requesting that he contact its office in regards to the debt.[4] In response, Scroggin sent CBJ a letter stating: "I refuse to pay this debt because I don't think I owe that because I was only there an hour and then left after I started feeling better."[5] Under §1692c (c) of the FDCPA, a "refusal to pay" letter acts as a cease and desist (C&D) letter.[6] However, the wording of Scroggin's letter prompted further response from CBJ to explain why Scroggin owed the debt.[7] CBJ called Scroggin's phone one time and left a non-threating message.[8] Scroggin directed his friend to check his voicemail and the friend heard

---

[1] All references to the record will cite to the appropriate document number. (Doc.__at__). References to the trial transcript will be "TT at __, line__". References to Appellant's brief will be "Appellant Brief at __."
[2] Doc. 1;  Appellate Brief at 14.
[3] TT at 187, lines 18-24.
[4] *Id.* at 188, lines 6-11. Def. Tr. Ex. 34.
[5] Doc. 1-1.
[6] See 15 U.S.C. §1692c (c).
[7] TT at 190, lines 11-22.
[8] *Id.* at 193, lines 9-12; Doc. 1-3 is a transcript of the message left by CBJ.

CBJ's message.[9] Section 1692c (b) of the FDCPA prohibits a debt collector from disclosing to a third party that a consumer owes a debt.[10] CBJ then sent a second letter requesting that Scroggin contact its office.[11] Prior to filing suit, Scroggin sent a demand letter to CBJ.[12]  Believing that it did not commit a violation, CBJ did not respond.[13]

Scroggin sued CBJ *pro se* for violating the FDCPA and AFDCPA for violation of the C&D letter and for third party disclosure.[14] Scroggin hired attorney Victoria Leigh a few months later.[15] CBJ's counsel took Scroggin's deposition and learned about Scroggin's online profile and postings.[16] After the deposition, Scroggin emailed CBJ's counsel a direct link to an internet forum where he posted prurient comments about CBJ's counsel.[17] Scroggin's offensive comments prompted CBJ's counsel to file a motion to dismiss and for an order civility.[18] After CBJ filed its motion, Scroggin began to send emails to CBJ's counsel of a harassing nature.[19] The district court denied CBJ's motion, but ruled that all of

---

[9] TT at 133, lines 11-16.
[10] See 15 U.S.C. §1692c (b).
[11] TT mat 193, lines 14-23; Doc. 1-4.
[12] TT at 173, lines 17-23.
[13] *Id.* at 180, lines 15-17.
[14] Doc. 1.
[15] Doc. 9.
[16] Doc. 18-1 at 15, lines 7-25.
[17] Doc. 18-4.
[18] Doc. 18.
[19] Doc. 26-3.

13

Scroggin's postings would be admitted into evidence as statements of a party opponent under Fed.R.Evid. 801(d)(2).[20] This matter proceeded to a jury trial on July 15, 2013.[21] CBJ introduced over 6,500 of Scroggin's online posts into evidence.[22] At trial, the jury found that CBJ twice violated the FDCPA and the AFDCPA when CBJ contacted Scroggin after it received a refusal to pay letter from Scroggin and communicated to a third party that Scroggin owed a past-due debt.[23] However, the jury did not award Scroggin any actual or statutory damages for CBJ's violations and found that he brought the lawsuit in bad faith.[24] CBJ timely filed a motion requesting its attorney's fees and costs pursuant to §1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B) or, alternatively, pursuant to the district court's inherent power.[25] The district court awarded CBJ $33,220.21 of its attorney's fees and costs.[26] Scroggin appealed the award.[27]

---

[20] Doc. 32.
[21] See Doc. 68.
[22] *Id.* at 5.
[23] Doc. 52.
[24] *Id.*
[25] Doc. 58.
[26] Doc. 68.
[27] Doc. 72.

14

## Summary of the Argument

The district court did not abuse its discretion in awarding CBJ its attorney's fees and costs and its ruling should be affirmed. This case is completely fact-driven and the district court had the best opportunity to observe the parties' litigation conduct. The evidence fully supports that Scroggin brought and continued this lawsuit in bad faith and for the purposes of harassment. The district court saw Scroggin's dishonest intent in setting up CBJ into making two separate FDCPA violations. However, since the FDCPA is interpreted as a strict liability statute, the jury found that CBJ made two violations. The district court found these violations to be technical and harmless because the jury awarded Scroggin zero damages. Based upon Scroggin's vexatious litigation conduct as outlined in this brief, the district court had the authority to award CBJ its attorney's fees and costs. Therefore, the district court's ruling should be affirmed.

15

# Introduction

Scroggin is a frequent poster on online debtor/creditor message forums. He posts under the usernames "Coltfan1972" or "Todd Bean." From the outset of this litigation, Scroggin has posted online about the case, CBJ and its counsel. The following postings,[28] which were posted online by Scroggin, explain his strategy and intent with this entire lawsuit:

> I'm not going to take down this [debt collection] industry no more than suing the tabocco industry takes out the tabocco industry. What I am going to do and have been doing is put a deep dent in the pocket book of this agency [CBJ].

> I'm driving a mack truck into this one agency [CBJ] checkbook, insurance premiums, lost revenue from time dedicated to this suit, making it a pubic record in a relatively small town where any other attorney in the country that goes to Pacer can see this agency has lost (which they will lose)

> I'm now working for a law firm [Leigh Law Firm] and we are going through this agency court records and we plan on suing them over and over and over and over again and aggressively going looking for clients. We will use this case as a selling point and hope there is the blood in the water and sharks start to circle.[29]

> *****

> I'm going to keep doing it over and over and over and over and over again. Getting behind on bills does not give somebody a license to treat others like garbage.

---

[28] Note that all of the postings authored by Scroggin were admitted into evidence and considered by the district court in its rulings. The postings were retrieved from www.creditinfocenter.com, www.debtorboards.com and www.insidearms.com. Additionally, all of these postings are cited in their original form and thus, include all misspellings and grammatical errors.

[29] Doc. 58-3 at 73, post 123.

Appellate Case: 13-3346    Page: 16    Date Filed: 04/02/2014 Entry ID: 4140204

And they [CBJ] screwed with the wrong person because I'm smart, I'm determined and you know what you just said it yourself I can get under your skin. I know the buttons to push and I know when to back off and when to push hard.

But NO, flipped it on them and now I'm pulling the strings and I've got this thing turned into the biggest train wreck there is and all you have to do is pull the case from Pacer to see I'm not lying.[30]

***

**I refuse to pay, you contact me for any other reason your sued, simple as that.**

Then when I sue you and you know the stat max is 1K and you want to try to run me out of the game, get ready. That is when I'm going to make you bleed. Then you figure it out and offer me the stat max, I'm saying NO. You want to call me in for a depo, fine, I'm turning it into a circus, driving that thing right through the roof, flipping it on you, **getting an attorney of my own that gets the atty fees I can't get (at least awarded to me) and when we are said and done you are now stuck with already throwing a ton of money at this to try and still stay under your 10K deducible.**

But no I now won't play and no I'm not settling for the 5K you offered (it's on the video their attorney even says you turned down 5k) and the other now offers I'm not disclosing.

**You are now going to bleed**. I'm hitting you at your 10K ded, your ins will kick in, you will have a public record of this for any other consumer or consumer law firm to see, and when I win in court my judgement won't come with a non disclosure agreement.

10K is not chump change and then there are now atty fees on both sides. Plus there is the chance of a runaway jury verdict that could I fully admit get overturned but exceed the policy limits of 100K and now to get that overturned you're out a ton.

---

[30] *Id.* at 102, post 169.

17

**If you even dream about violating my rights under the FDCPA the first thing you do is better apologize and pray I don't sue you for even dreaming about it**. Deal with it. I'm going to win and it is going to cost a lot more than you guys are acting like nobody cares about.[31]

This lawsuit has never been about abusive debt collection practices the FDCPA seeks to prevent. It is about a serial pro se plaintiff who is out to seek revenge on debt collectors. Scroggin proudly manipulates the FDCPA to get out of paying legitimate debts and waste the federal judiciary's time all in an effort to keep up his online reputation. This fact-driven case severely runs afoul to the Congressional intent behind the FDCPA. As such, this case was never about vindicating a legal right; it was only about Scroggin attempting to gain a big payday and gain online fame.

## ARGUMENT

**I.      The District Court did not abuse its discretion in finding that Scroggin brought this action in bad faith and for the purpose of harassment.**

### 1.      Standard of Review

Abuse of discretion is the  proper standard to review the district court's finding that Scroggin brought and continued this action in bad faith and for the purpose of harassment. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).  "We give substantial deference to the district court's determination as to whether sanctions are warranted because of its familiarity with the case and

---

[31] Doc. 58-3 at 90-91, post 150 (emphasis added).

Appellate Case: 13-3346      Page: 18      Date Filed: 04/02/2014 Entry ID: 4140204

counsel involved." *Willhite v. Collins*, 459 F. 3d 866, 869 (8th Cir. 2006) (citing *Lee v. First Lenders Ins. Servs., Inc*., 236 F.3d 443, 445 (8th Cir. 2001).

    2.   <u>Defining Bad Faith and Harassment</u>.

      After reviewing all of the evidence, the district court properly found that Scroggin brought this lawsuit in bad faith and for the purpose of harassment. The district court defined "bad faith" as "[d]ishonesty of belief or purpose." *Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Wa Inc*., 715 F.3d 1196, 1201 (9th Cir. 2013) (quoting Black's Law Dictionary 159 (9th ed. 2009). See also Arkansas Model Jury Instructions–Civil § 403 (2013) ("Bad faith" means "conduct that is dishonest, oppressive, or carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge"); *State Auto Property and Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 56, 991 S.W.2d 555, 559 (1999). The district court defined "harassment" as "'words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose.'" *Adams v. Ford Motor Co*., 653 F.3d 299, 307 (3rd Cir. 2011) (quoting Black's Law Dictionary 784 (9th ed. 2009). See also Webster's New Collegiate Dictionary 522 (ed. 1977) (to "harass" is to "exhaust," "fatigue," or "annoy persistently").[32]

---

[32] Doc. 68 at 4-5.

Appellate Case: 13-3346    Page: 19    Date Filed: 04/02/2014 Entry ID: 4140204

In its order, the district court laid out an abundance of evidence to show Scroggin's dishonest intent in bringing and continuing this action for the purposes of annoying CBJ and its counsel and accumulating attorney fees. As outlined in further detail below, the district's court decision should be affirmed.

3.  Scroggin abused the FDCPA by successfully soliciting an FDCPA violation by drafting an ambiguous "refusal to pay letter" to get out of paying a legitimate debt.

"If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." see 15 U.S.C. §1692c(c) and Ark. Code Ann. §17-24-504(c). The following postings authored by Scroggin will confirm the district court's finding that Scroggin had the "dishonest intent" to setup CBJ into making an FDCPA violation when he drafted his "refusal to pay" letter.

For instance, Scroggin explained his soliciting strategy to other forum users:

> If you want to solicit the FDCPA violation, send them the refusal to pay with a reason. They are more likely to write you back to show you how you are wrong and they are right, in other words argue with you. **Who cares, what they say, it's an FDCPA violation and it's strict liability**.[33]

---

[33] Doc. 58-5 at 4, post 160.

20

The above post accurately describes how Scroggin responded to CBJ's initial

communication letter[34] regarding the status of his past due medical debt in which

he wrote:

> In response to the letter you sent me that has dated February 27, 2012,
> and the account number from you of 2249932. I refuse to pay this
> debt because I don't think I owe that because I was only there [at St.
> Bernard's Medical Center] for an hour and then left after I started
> feeling better.[35]

Scroggin's deceptive plan to setup CBJ worked and prompted CBJ to further

contact him again. At trial, CBJ's office manager, Diann Jenkins, the person who

received Scroggin's letter, testified that she believed Scroggin's letter was

disputing the debt under §1692g (b)[36] and stated:

> The way I interpreted it as a dispute because he [Scroggin] said, "I am
> refusing to pay this because" and he alluded to an instance where he
> went to the hospital and sat there for an hour and left and he was
> charged $1200. And if I got a bill for $1200 and I had gone to the
> emergency room and sat there for an hour and left and was charged
> $1200, I would want an explanation as to why I was charged $1200.
> So I took it as a dispute, and I am sorry if I did anything wrong with
> that. I genuinely thought it was a dispute because of the fact that he
> said the reason why he was refusing to pay the debt.[37]

As such, Scroggin's trick succeeded and he caused Ms. Jenkins into making a

violation that caused Scroggin absolutely no harm.

---

[34] 15 U.S.C. §1692g (a) requires debt collectors to disclose specific information in regards to a debt. This was not an issue for the court.

[35] Doc. 68 at 7; Doc. 1-1.

[36] 15 U.S.C. §1692g (b) requires debt collectors to stop collection and send the consumer a verification of the debt if the consumer disputes such debt.

[37] TT at 190, lines 13-22.

Appellate Case: 13-3346     Page: 21     Date Filed: 04/02/2014 Entry ID: 4140204

Scroggin even bragged about how his trickery was allowing him to proceed to a federal jury trial. For instance, he posted:

> I mean I'm in federal right now because "I refused to pay" when I wanted to C&D. It's pretty obvious that 99.9% are going to write a long drawn out letter for a C&D instead of I refuse to pay. Too bad for them I'm that .001% and they know they were set up and are screaming and hollering unclean hands.[38]
>
> ***
>
> [I]f you send them a refusal to pay letter it acts as a C&D. They are more likely to continue collection activity with a refusal than a C&D. At least that is what happened to me. Of course, I made my refusal look like it was written by a four year old so they would think they could just run over me.[39]
>
> ****
>
> I told them I refused to pay the debt, it's their damn fault they did not know that acted as a C&D also. I guess the certified mailing did not give it away. Their excuse is they had to explain to me why I did owe the debt and that required them contacting me. NO, I did not ask for an explanation, I refused to pay the debt, PERIOD. You chose to try and explain it to me and now your screwed so pay up.[40]
>
> ****
>
> They just say I set them up (who me) and just don't want to pay me because  A. I'm being an Ahole, B. demanding a ton more than these cases usually settle for because I would rather have a trial and C. they think I'm a professional litigator on consumer rights issues.
>
> **And again the beauty is A,B,C are all true and those are not legal defenses.**   The we got caught by somebody that knows what they are doing and is now **putting us through hell** is just not going to cut it.

---

[38] Doc 58-5 at 11, post 161.
[39] Doc 58-5 at 7-8, post 78.
[40] Doc. 18-5 at 16, post 52.

Appellate Case: 13-3346     Page: 22     Date Filed: 04/02/2014 Entry ID: 4140204

In other words, if that is your best, then your best is just not good enough.[41]

Through his postings, Scroggin admits that all CBJ did was contact him to attempt to explain to him why he owed the debt. CBJ was tricked, did nothing abusive and caused Scroggin no harm. But due to the FDCPA's strict liability structure, since CBJ chose to try and explain the past due debt to Scroggin, he contended CBJ was "screwed" and "should pay up."

4.      Scroggin attempted to increase his actual damages claim by conveniently setting up CBJ to make a third-party disclosure.

It is a violation of both the FDCPA and AFDCPA for a debt collector to disclose the contents of a debt to a third party. See 15 U.S.C. § 1692c (b) and Ark. Code Ann. § 17-24-504 (b). As the below postings will demonstrate, Scroggin attempted to manipulate his damages claim by directing a friend to check his voicemail after CBJ had called and left a non-threatening message.

Scroggin states in his brief that from the outset, he only alleged to suffer actual damages because he was mad.[42] Though, in his original and amended complaint, he pled that his friend Kirby Wilson listened to his voicemail and that such third party disclosure caused Scroggin to experience:

[E]xtreme stress, embarrassment, shock, the pre-existing condition of anxiety was re-aggravated and the Plaintiff experienced severe anxiety (panic attack), a condition which Plaintiff has been under a medical

---

[41] Doc. 18-5 at 72, post 220.
[42] See Appellant's Brief at 63.

23

doctor's care for in the past, including the Plaintiff being seen in the emergency room three times for severe anxiety attacks.[43]

In his deposition, Scroggin testified CBJ's phone call and letter caused him to have two anxiety attacks, but that he did not seek medical attention.[44] He further explained that "[u]sually when someone violates my rights I always have a panic attack."[45] However, the same day that Scroggin received CBJ's call, he posted online the following statement about the call:

> Ink has not even dried on the settlement from the collection agency on the last federal lawsuit, when all of the sudden I return from the gym with an early **Christmas present** on my voice mail. An agency that I wrote to a few months ago and notified that I refused to pay, therefore triggering an automatic C&D was nice enough to call. They also put on the message that I had three seconds to hang up if I was not Coltfan and then three seconds to find a place to listen to the message if there were others around. Unfortunately, the house was crowded and three seconds just did not give me enough time to find proper shelter from their illegal contact and illegal third party communication. Why do I have to seek shelter from embarrassing third party contact in my own house when a valid C&D was in place. I sure as hell don't have the answer, maybe a federal jury can figure it out. Here we go again !!! It's on !!!!![46]

At trial, Kirby Wilson testified that Scroggin directed him to check his voicemail and that was the first time he could ever recall checking Scroggin's voicemail.[47]

Not surprisingly, Scroggin also advises other debtors on how to manipulate

---

[43] Doc. 1 at 7, ¶ 44. Doc. 8 at 12, ¶57.
[44] Doc 18-1 at 18.
[45] Doc 58-4 at 2, lines 17-18.
[46] Doc 58-5 at 1, post 1.
[47] TT at 113, lines 11-16.

Appellate Case: 13-3346    Page: 24    Date Filed: 04/02/2014 Entry ID: 4140204

their claim for damages, which provides additional evidence of his dishonesty. For

example, he has advised other forum users:

> Seriously, go to the doctor and complain of stress.  When the doctor
> and/or nurse asks you what different events have been happening in
> your life, unload on them about this collection crap.  They will note it
> in your chart and I can assure you that you will be glad you did a few
> years later if this gets close to trial!!!!![48]

***

> I might even have to go to the doctor and complain of anxiety. Then
> when the doctor asked you what has changed in your life that might
> be causing the issues you tell the doctor about this. They will then
> write it in your chart and when you sue for emotional distress the
> other side will think they are being sneaky by asking you for medical
> records. Then when you provide them and their name is all over
> them. That usually does not go over well with them. Don't ask me
> how I know.[49]

***

> P.S. you might want to go to your doctor for those anxiety attacks
> you are having due to Allied's harassment Sure makes if you were to
> ask for emotional distress a lot easier to get if you are suddenley put
> on meds that control anxiety I highly recommend lexapro and xanax
> be perscribed . Also makes for the settlement agreement be for future
> medical bills and therefore no taxes. Amazing how much better you
> will feel after the settlement check.[50]

Thus, Scroggin's own statements and the testimony from trial show that Scroggin

intentionally directed his friend to check his voicemail in an effort to manipulate

his actual damages claim and plead "he suffered emotional distress" in an attempt

to gain leverage in obtaining a higher settlement.  Fortunately, the federal jury did

---

[48] Doc 58-5 at 5, post 163.
[49] *Id.* at 9, post 111.
[50] *Id.* at 19, post 2096.

Appellate Case: 13-3346     Page: 25     Date Filed: 04/02/2014 Entry ID: 4140204

"figure it out" when they properly awarded Scroggin zero statutory and actual damages and found that he brought this action in bad faith.

5. <u>Scroggin was the only party that engaged in abusive and harassing conduct throughout this litigation</u>.

Although CBJ did nothing abusive, harassing, or oppressive in dealing with Scroggin, he was on a mission to take down the debt collector and make it "bleed." He believed that since CBJ technically violated the FDCPA, CBJ had "two choices, pay [him] off or spend the next two years in federal court fighting a pro se litigant that is hell bent on making the experience an expensive nightmare, and who will probably win as least on some of the claims."[51]

Scroggin did succeed in making this case an expensive nightmare. Prior to taking Scroggin's deposition, CBJ offered to settle this matter for $5,000.00.[52] However, this amount was not enough "to pay Scroggin off." In response to such offer, Scroggin's attorney forwarded to CBJ's counsel, with Scroggin's consent, the following email from Scroggin:

> Listen here, you tell that **little witch** that we will take 6500.00 and that expires at 5:00 PM today. I was a claims adjuster for 12 years and the second this reaches 10K and ins takes over the insurance company will immediately settle. **On top of that I want a depo**, I've already got people lined up to pay for the video and I'd crawl through 40 feet

---

[51] Doc. 58-3 at 15, post 21.
[52] CBJ's counsel offered Scroggin $5,000.00 to settle this matter days before his scheduled deposition was to take place. At that time, Scroggin could not have incurred more than $2,500.00 in attorney's fees and $2,500 was the maximum statutory recovery he could have received under the statutes.

26

of snow to make it I have to. I'm not scared of a depo and surly not of a trial. I know the law, I know I'm right, I know what to say and not to say and if she thinks for one second she stands a chance going against me she has another thing coming. We will freaking steam roll them at trial. I got [a state court judge] to overrule himself on his own motion to reconsider because I was so confident when I was arguing the law to him. We will mop the floor with them. The Supreme Court of the US is on my side, **the fee shifting means I win no matter what**, and I'm not afraid of a freaking thing. **In fact I'll tell her it's not if we win but just how much**. **And I'll get this over her client's deducible and I don't care if I get 1K at trial and you 80K in legal fees**, we are not settling for anything less than 6500.00 and **she can shove her threats up her ass and she better get ready.** I beat national loan recoveries at trial and I stipulated I owed every dime they were asking for at the beginning of the trial. The other sides jaw dropped when I said not to them and then challenged their standing. **I know what I'm doing and I'm going to kick their ass all over the courtroom**. I don't care if you forward this message to her, I really don't. It's 6500.00 by 5:00 or shove it up her ass and get ready for the depo and trial. **I know what the hell I'm doing and I'm going to win and I'm going to win by a landslide**.[53]

Scroggin even bragged online about rejecting the "very nice" settlement:

And let's don't forget, they [CBJ] have offered a very nice chunk of change to settle this**.  I'm the one continuing this circus.**  They have offered 6K for a letter and a phone call**.   I'm calling the shots and they hate it.**   They thought some dumb hick would jump at 1,500 (first offer) and then are shocked when I won't take the big bucks. **Screw em, we're going to trial.**[54]

Scroggin brought this suit pursuant to the FDCPA, a statute that is aimed at

eliminating abusive debt collection practices by debt collectors. Section 1692k(d)

of the Act prohibits a debt collector from using obscene or profane language in

---

[53] Doc 26-5 at 1 (emphasis added).
[54] Doc. 18-5 at 70, post 213 (emphasis added).

communications with consumers; making threats; or causing a consumer's phone to ring repeatedly to annoy or harass. There is no allegation that CBJ's conduct even came close to be harassing or abusive. On the other hand, Scroggin, the consumer, directed his attorney to send CBJ's counsel an email where he refers to CBJ's counsel as a "little witch" who can "shove her threats up her ass and get ready" because he "know[s] what the hell [he is] doing ….[he is] going to win a landslide...and kick [CBJ's] ass all over the courtroom." Thus, Scroggin is the only party that has engaged in the exact type of abusive behavior the FDCPA was designed to prevent.

### 6. <u>Scroggin attempted to make a mockery of CBJ's deposition</u>.

It was an "ole happy day" for Scroggin once he found out that CBJ's counsel requested to take his deposition.[55] He was excited as a six year old on Christmas morning.[56] Scroggin posted that he forced CBJ into doing the deposition on a "Saturday morning because [he] was too busy during the week doing nothing"[57] and that he wanted "to [make] real clear that the depo might have been scheduled as an intimidation tactic, but that plan…failed miserably and the next three hours were going to be a total nightmare."[58]

---

[55] Doc 18-5 at 1, post 1.
[56] *Id.*
[57] *Id.* at 15, post 50.
[58] *Id.* at 57, post 163 (emphasis added).

Appellate Case: 13-3346     Page: 28     Date Filed: 04/02/2014 Entry ID: 4140204

From the beginning, Scroggin intended on demeaning the deposition process. For instance, prior to the deposition he posted:

My goal is at some point after a ton of time has been wasted that we can have some big blow up that gets the whole thing shut down with both sides screaming at each other and accusing the other of **turning this into a circus**. **I've got some one liners already planned that regular members will catch…I'm really hoping for something that can go viral**.[59]

Scroggin planned on turning the deposition into a "circus" and he did not care if he damaged his claim for actual damages. For example, the morning of the deposition he posted:

I want to thank all for the well wishes and while I will turn this into a circus I still will make sure to concentrate on making sure I don't say anything that hurts my case.

\*\*\*

I have not been this excited in at least 20 years. I'm actually getting ready to sit down with a debt collector attorney that their client has admitted to violating the FDCPA, and in which they have no legal argument that will hold water, and they are going to go toe to toe with Coltfan. All of the things I've been waiting to say and do, I'm getting ready to have the opportunity. **I don't even care if I damage my emotional distress and I just have to rely on statutotry and state damages plus costs.** This is going to be a great day and you will all be there in spirit and I will know it.

I will not let you guys down. I can't ever see being in this position again and I really don't think I'll get a trial out of this so I'm going to make it one for the ages. I will cash every check I've been writing and I won't back down and I won't be intimidated. I'm usually the one giving the encougagement and telling others what they need to do and say.[60]

---

[59] Doc. 18-5 at 37, post 109 (emphasis added).
[60] *Id.* at 41, post 124.

Appellate Case: 13-3346   Page: 29   Date Filed: 04/02/2014 Entry ID: 4140204

During the deposition, Scroggin succeeded in making perverted "one-liners" by purposely stating unnecessary sexual statements in an effort to make his deposition video be "funny." For instance, in response to why he and his former wife divorced, Scroggin stated "[b]ecause she went to Nashville and had a threesome with another guy and her boyfriend and didn't invite me to come along. I kind of wanted to be there for that."[61] In explaining the background behind a prior lawsuit, Scroggin stated:

> I sued the Grove Apartment Complex because what happened what I moved out and me and the apartment manager, we were having sex all the time in the model apartment….Yeah, and so she got mad at me when I cut her off because I got a girlfriend and she thought I should keep banging her.[62]

After the deposition, Scroggin bragged about his "one-liners" and wrote "I'm going to make a very good edited copy [of the deposition video] that catches all the highlights, like the Larry Flynt one on You Tube where it just cuts to all the funny stuff."[63] Scroggin used CBJ's deposition as means to entertain his online friends, attempt to make a viral video and harass CBJ and its counsel in the process. Scroggin's behavior justifies the district's court finding.

---

[61] Doc. 18-1 at 5, lines 11-14.
[62] *Id.* at 7, lines 11-20.
[63] Doc. 18-5 at 45-46, post 139. Scroggin also later sent CBJ's counsel a link to that Larry Flynt deposition. See Doc. 24-3 at 3.

Appellate Case: 13-3346    Page: 30    Date Filed: 04/02/2014 Entry ID: 4140204

7.     Scroggin purposely harassed CBJ's counsel after the deposition.

During the deposition, CBJ's counsel learned about "Coltfan" and Scroggin's online posting history. After his deposition, Scroggin sent CBJ's counsel a direct link to a forum topic where he posted prurient comments about opposing counsel's physical appearance and stated:

> It was not her best day for sure. Since it was a Saturday she was in blue jeans and looked like she just got out of bed. Almost like she was not going to be dressed up on a Saturday and was not real happy that she had to be at work on a Saturday (of course Coltfan was in a suit and tie looking like he was ready for a federal trial, but that is just how I roll).

> I've seen pictures of her so I know the potential is there. **Plus she just had a kid and her weight was excellent and she had a nice rack**. So she was not having a very good day and of course when I walked in it just went downhill from there so I'm looking at the big picture and saying she was fine on that day and it was obvious when she wants to look hot she can look hot.

> Overall, compared to what I've gone against, she was hot for sure but overall, yeah, she was hot. The attorney for one of the JDB I went against a few years ago I swear was trying to get me to drop the case by seeing just how disgusting she could look every time we went to court. I swear she got beat to an inch of her life by the ugly stick before each hearing.

> However, here, there was not that problem. So thank you so much for bringing up the most important detail that I should have immediately addressed. **She was not hot that day but very doable and yes hot.**[64]

In response to CBJ's counsel examining his posting activity, Scroggin posted the

---

[64] Doc. 18-5 at 59, post 168.

following, which he acknowledged at trial was directed at CBJ and its counsel:

> **Well F U and up yours !!!!!!** I know you're reading this thread because I gave it to you in the depo and then emailed it to you later in the day because you could not even spell the website right. So walk into that federal courtroom with me and get ready for the biggest [train wreck emoticon] ever.
>
> You're losers and you lost the minute I walked into that courthouse in June, laid 350 bucks on the counter and told that nice court clerk, 'stamp this SOB sister, I'm suing these bastards.'[65]

As explained by the district court, Scroggin even began sending CBJ's counsel emails that were of harassing nature. For example, Scroggin emailed a picture of a shirtless, overweight man in overalls on a cell phone and noted that the man was his uncle calling him "after he got yall's motion to dismiss and for civility. He made a good point, 'how the heck to you civilize the uncivil?' I told him, heck if I know????? You guys don't care if he shows up in his Sunday best overalls do you? He's a heck of a nice guy and won't say nothing rude to nobody. He even knows what the definition of 'is' is."[66] In another email, Scroggin told CBJ's counsel that he "can't wait to meet you in United States District Court where [you] will have a front row seat as a non attorney litigant puts on a first amendment argument clinic. I even have an invitation to Larry Flynt outstanding and have  been told by his office he is looking over my case. I'm sure he [has] an

---

[65] Doc. 18-5 at 74, post 222 (emphasis added).
[66] Doc. 26-2 at 3.

Appellate Case: 13-3346    Page: 32    Date Filed: 04/02/2014 Entry ID: 4140204

opinion on the matter."[67]  In another email, Scroggin asked counsel for CBJ "[a]t what point do you look in the mirror and ask yourself, 'Why did we just not return a stinking phone call' & 'So this is what a legal train wreck and a nightmare means' ... I'll make sure this case gets the publicity it deserves. But I'm sure you think I'm bluffing about that just like you thought I was about the Supreme Court and everything else you thought I was lying about in the deposition. Welcome to the party pal, see you in Little Rock, remember, you sent the invitation."[68]

Scroggin even boasted that a strict liability statute allowed him to act in such a harassing manner. For instance, he posted:

> She [opposing counsel] actually looked like I just gave her a gift by volunteering my posting handle. She is going to be very disappointed when **the motion in limine restricts her from even letting a skunk loose in the courtroom**…. **God, I love strict liability** when the FDCPA violation is not even disputed. A mandatory award is required, even if a dollar, if I win at trial and then that triggers all costs for them to pay and even if the unthinkable happened and I lost, it's obvious it's not a bad faith suit so they can't collect any fees from me. **I can just sit back and be as arrogant as I want and they can't do a damn thing about it.[69]**

Scroggin's above actions served no purpose other than to annoy CBJ's counsel.

8.  Scroggin only hired an attorney to gain attorney's fees for himself.

Scroggin initiated this action pro se and describes himself as the most educated FDCPA pro se plaintiff in the country.  The FDCPA is a fee-shifting

---

[67] Doc 26-2 at 7.
[68] Doc 26-2 at 9.
[69] Doc 18-5 at 52, Post 148

provision that allows a successful plaintiff to be entitled to collect its attorney's fees and costs. See 15 U.S.C. §1692k (a)(3). Due to the FDCPA's fee-shifting provision, Scroggin hired attorney Victoria Leigh a few months after he filed his claim.  In in deposition, Scroggin even admitted that the only reason he hired attorney Leigh was so that he could get attorney's fees because he could not figure out another way to get them for himself.[70]  Scroggin also made numerous posts about his stake in receiving attorney's fees for the attorney he was now working for. For instance, Scroggin wrote:

> We're getting paid when we win or that collection agency will have a new owner. **In fact, all they are doing right now is just driving my attorney's legal bills (which I now work for). I have a vested interest in her being awarded attorney fees!! That's all I'll say about that right now at this time**.[71]
>
> \*\*\*
>
> **We were banking on the attorney fees.** We knew no actual damages and figured a few hundred tops on Statutory but that would trigger the fee shifting.[72]

In *Jermain v. Carlisle*, members of this U.S. Supreme Court commented on the "cottage industry" that has developed in prosecuting no damage FDCPA cases. 130 S. Ct. 1605, 1631 (2010).   The FDCPA creates a "troubling dynamic of allowing certain actors in the system to spin even good-faith, technical violations

---

[70] Doc 58-4 at 4, lines 14-18.
[71] Doc 58-2 at 5, post 12. (emphasis added).
[72] Doc. 58-3 at 123, post 206. (emphasis added).

Appellate Case: 13-3346   Page: 34   Date Filed: 04/02/2014 Entry ID: 4140204

of federal law into lucrative litigation, if not for themselves then for the attorneys who conceive of the suit." *Id*. Based upon Scroggin's conduct and his postings below, it is clear that Scroggin and his former attorney were attempting to become a part of that "cottage industry" of FDCPA cases and "spin even good-faith, technical violations of federal law into lucrative litigation." For example, in response to a question from a forum member about whether Scroggin was still working with his attorney in light of the trial result, Scroggin answered as follows:

> I guess. We had several cases ready to file and/or send demands. I was doing all the work, pleadings, etc.. and she was signing off. I'm not sure now. I hate, hate, hate bluffing on this type of stuff and I see that being the way these will be handled. There is no way we can go to court on a few of these cases ... I just can't stand to bluff and then somebody call it and then I know we can't do what we say or go to court with them. She said before hiring me she was settling these for around 500.00 to 1K and with me wanted to triple that. Not a problem at all but if we can't back it up in court the word will quickly get out and creditors will just start calling the bluff.[73]

Scroggin further stated that "99% of cases settle because most debt collectors ... have no guts to go all the way. So she and I will still be able to make good money bluffing our way through, because [the debt collection] industry rarely fights."[74]

Fee-shifting statutes were designed to enable private parties to retain the legal assistance necessary to vindicate legal rights, not to create windfall awards for attorneys or their clients. Scroggin's motive in bringing this lawsuit is shown

---

[73] Doc 58-2 at 122, post 198.
[74] *Id.* at 74, post 126.

Appellate Case: 13-3346    Page: 35    Date Filed: 04/02/2014 Entry ID: 4140204

by his conduct prior to and throughout this lawsuit, his litigious nature, his online persona and postings, his desire to run up CBJ's legal fees and additionally, run up his own attorney's fees due to the FDCPA and AFDCPA "fee-shifting" provisions. Therefore, the district court's decision should be affirmed.

## II. The District Court did not abuse its discretion in awarding CBJ its attorney's fees and costs pursuant to 15. U.S.C. § 1692k (a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B).

### 1. Standard of Review

When an issue on appeal contains both legal and factual determinations made by the district court, the appeals court reviews the legal question of prevailing party status de novo and reviews the district court's actual award of fees and costs for an abuse of discretion. *DocMagic, Inc. v. Mortgage Partnership of America*, 729 F.3d 808, 812 (8th Cir. 2013).

### 2. Argument

15 U.S.C. §1692k (a)(3) and Ark. Code Ann. §17-24-512 (a)(3) set forth the circumstances in which both plaintiffs and defendants in FDCPA cases may be awarded attorney fees and costs. 15 U.S.C. §1692k(a)(3) states:

> (a) (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

> On a finding by the court that an action under this section was brought in bad faith **and** for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

36

The AFDCPA provides identical language for when a plaintiff may be awarded its attorney fees and costs, but states that the court may award attorney's fees and costs to the defendant "if the court finds that an action ...was brought in bad faith **or** for the purpose of harassment." Ark. Code Ann. § 17-24-512(a)(3)(A)-(B) (emphasis added). Both statutes authorize a sanction against FDCPA plaintiffs who abuse the Act's private right of action.

> A. *Scroggin was not entitled to collect his own attorney's fees and costs.*

Although this issue is not appealed by Scroggin, the district court correctly found that Scroggin was not entitled to an award of his attorneys fees and costs by adopting the Fifth Circuit's approach as explained in *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996). 15 U.S.C. §1692k(a) provides:

> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; and
> . . .
> (3) **in the case of any successful action to enforce the foregoing liability, the costs of the action**, together with reasonable attorney's fees as determined by the court.

Appellate Case: 13-3346   Page: 37   Date Filed: 04/02/2014 Entry ID: 4140204

In *Johnson*, the Fifth Circuit found that a plaintiff who failed to enforce the liability for actual or additional damages against a separate defendant did not meet the explicit requirement of § 1692k (a)(3) that she bring a "successful action to enforce the foregoing liability" in order to receive attorney's fees and costs. 80 F.3d at 151 (5th Cir. 1996). The district court adopted the Fifth Circuit's reasoning that:

> "[r]eading the FDCPA as requiring attorney's fees to be paid in actions where the plaintiff fails to prove damages rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." *Johnson*, 80 F.3d at 151. In contrast, interpreting the FDCPA as requiring that a plaintiff must receive actual or statutory damages in order to receive attorney's fees and costs "will require attorneys to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees."[75]

Since the jury awarded Scroggin no statutory or actual damages for CBJ's two FDCPA violations, he was not successful in enforcing the foregoing liability, and thus not entitled to his attorney fees and costs.[76]

> B. *Since Scroggin failed to enforce the foregoing liability under §1692k(a)(3), he was not a prevailing party.*

Scroggin's success in this action was only technical and de minimis and limited to the jury's determination that CBJ made two violations. "The [FDCPA] use of the term 'successful action' appears to be synonymous with the term

---

[75] Doc. 68 at 25.
[76] Doc. 52.

Appellate Case: 13-3346     Page: 38     Date Filed: 04/02/2014 Entry ID: 4140204

'prevailing party.'" See *Crabill v. Trans Union, LLC.*, 259 F.3d. 662, 666 (7th Cir.

2001). In *Dechert v. Cadle Co.*, the Seventh Circuit Court of Appeals explained:

> The general, indeed all but invariable, rule is that to be a prevailing party and therefore entitled to an award of fees and costs, you either must obtain a judgment that provides you with formal relief, such as damages, an injunction, or a declaration that you can use if necessary to obtain an injunction or damages later, or must obtain a settlement that gives you similar relief.

441 F.3d 474, 475 (7th Cir. 2006) (citing *Buckhannon Board & Care Home, Inc. v.*

*West Virginia Dept. of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835,

149 L.Ed.2d 855 (2001)). Scroggin argues that he was successful in that he forced

CBJ to change its business model.  However, CBJ made such change voluntarily.

As the district court explained:

> [f]rom a legal perspective, however, CBJ changing its business model did not thereby render Scroggin a prevailing or successful party. Rather, "[i]n *Buckhannon* [532 U.S. 598] the Supreme Court rejected the 'catalyst' theory, whereby a lawsuit that did not eventuate in any formal relief or settlement could be deemed 'successful' if it prompted the defendant to change his ways."  *Dechert*, 441 F.3d at 475.[77]

By not being awarded any damages, Scroggin was not successful in

"enforcing the foregoing liability" within the meaning of the statutes, and

therefore, he is not the prevailing party of this action. Thus, the district court was

correct in holding that in order to be "prevailing" or "successful" plaintiff, one must

---

[77] Doc. 68 at 9.

39

Appellate Case: 13-3346     Page: 39     Date Filed: 04/02/2014 Entry ID: 4140204

receive formal relief or a settlement that provides similar relief and that it is not enough that the court merely enter judgment.[78] The district court concluded:

> Because Scroggin received nothing for his efforts other than a tainted and worthless determination that CBJ violated the FDCPA and AFDCPA (tainted in that Scroggin obtained such a determination only by setting up CBJ into violating the FDCPA and AFDCPA and worthless in that Scroggin received no damages), Scroggin is not a "prevailing" or "successful" party–he did not bring a "successful action to enforce the foregoing liability." 15 U.S.C. § 1692k(a)(3); Ark. Code Ann. § 17-24-512(a)(3)(B).[79]

The district court did note that since Scroggin obtained a judgment that found CBJ made two FDCPA violations, CBJ could not be found to be the prevailing party.[80] Although there is no controlling 8th Circuit authority concerning whether a defendant has to be a prevailing party to receive fees under §1692k (a)(3), the district court recognized that most courts appear to only award attorney's fees and costs under this section to prevailing defendant.[81]

However, §1692k (a)(3) does not even mention prevailing defendants, but rather targets misconduct by plaintiffs. The absence of a specific reference to prevailing defendants notably contrasts with the reference to successful actions by plaintiffs in the first sentence of subsection (a)(3). 15 U.S.C. §1692k(a)(3). "Where

---

[78] Doc. 68 at 29.

[79] *Id*.

[80] *Id.*

[81] *Id*. (Citing *Johnson*, 80 F.3d at 153 (FDCPA defendant could not be considered a prevailing defendant when she was found to have violated two FDCPA provisions, but she avoided a monetary judgment)).

40

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). For this reason, Congress should be understood to have decided not to condition the award of fees under §1692k (a)(3) to a defendant who was not deemed a "prevailing party" because the plain language of section §1692k (a)(3) simply contains no such requirement. By doing so, Congress did not intend for §1692k (a)(3) to be so limited and intended this provision to apply to this exact situation at hand.

### C. *Bad Faith and Harassment for purposes of § 1692k (a)(3).*

In making its finding, the district court recognized that other courts have held that if any part of the plaintiff's underlying suit is successful or at least a colorable claim, then there can be no finding that the matter was brought in bad faith and for the purpose of harassment pursuant to §1692k(a)(3).[82] See *Horkey v. JVDB & Associates, Inc*., 333 F. 3d 769 (7th Cir. 2003). In *Horkey*, the plaintiff filed her complaint alleging that defendant's employee violated several sections of the FDCPA when the employee called plaintiff at her place of employment three times and one of those occasions told plaintiff's co-worker she needed to stop being a "fucking bitch." *Id.* at 772. The district court entered a judgment in favor

---

[82] Doc. 68 at 27.

Appellate Case: 13-3346    Page: 41    Date Filed: 04/02/2014 Entry ID: 4140204

of plaintiff and awarded her $1000.00 in statutory damages and $350.00 in actual damages. *Id.* The district court denied defendant's motion for attorney's fees and costs under §1692k(a)(3) because the defendant could not show any evidence of plaintiff's bad faith other than plaintiff not being able to secure a summary judgment for one out of her four FDCPA claims. *Id*. The Seventh Circuit affirmed the denial of the defendant's motion and could not fathom how the district court could hold otherwise. *Id*. at 775.

The current case before this Court demonstrates the particular circumstances of when a court could rule otherwise. Unlike, the plaintiff in *Horkey* who was called an expletive by the defendant's employee, Scroggin was not called any obscene or profane name. Additionally, the plaintiff in *Horkey* received a judgment for the maximum statutory damages and some actual damages, and Scroggin received nothing. Most importantly, unlike Scroggin, there was no evidence surrounding the plaintiff's improper purpose in filing the action or her intent in continuing the action in *Horkey*. Thus, this case is distinguishable on its facts and *Horkey* should not apply.

In *Jacobson v. Healthcare Financial Services, Inc.*, the Second Circuit reversed the district court's decision to grant a defendant attorney's fees and costs pursuant to §1692k(a)(3) because the district court's ruling relied on the plaintiff's acknowledgment that the underlying debt was valid, and plaintiff's admission that

42

he did not feel "harassed, threatened or misled by the debt collector's letter." 516 F. 3d 85, 96 (2ⁿᵈ Cir. 2008). The Second Circuit found those facts were irrelevant to the questions of whether [plaintiff] brought the action in bad faith and for the purpose of harassment. *Id*.

The Second Circuit's approach ignores the fact that Congress also provided a statutory mechanism to thwart abusive suits that caused harm to no one by enacting §1692k (a)(3). See *Valez v. Portfolio Recovery Associates, Inc*., 881 F.Supp.2d 1075, 1086 (E.D. Mo. 2012) (quoting *Parker v. Pressler & Pressler, LLP, 650 F.Supp.2d 326, 347* (D.N.J. 2009)). Under §1692k(a)(3), Congress intended to punish a morally culpable plaintiff regardless of any deterrent effect his lawsuit may have. If all a plaintiff needs to have is a minimally colorable claim, then §1692k (a)(3) would be an almost impossible standard to meet. This reading essentially gives any plaintiff, such as Scroggin, a continuing free pass to maintain harassing suits without any fear of consequence. Thus, the district court correctly held:

> [I]t would be a legal mockery to conclude that although Scroggin flagrantly manipulated and abused the judicial process and the FDCPA and AFDCPA in his vendetta against CBJ, thereby wasting valuable judicial resources, he is nevertheless shielded from liability for attorney's fees and costs under 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. §17-24-512(a)(3)(B) simply because of CBJ's two technical violations of the FDCPA and AFDCPA that resulted in no harm and only occurred because of Scroggin's trickery.

43

Moreover, subjecting Scroggin to liability for CBJ's attorney's fees and costs under 15 U.S.C. § 1692k(a)(3) and Ark. Code. Ann. § 17-24-512(a)(3)(B) will deter others who, in Scroggin's words, believe that they can "set up" a debt collector into violating the FDCPA or AFDCPA and use the judicial process to "maximize the retaliation, do some damage and hopefully goad and/or force [the debt collector] to an actual trial," "play the role of the beat down consumer" in court, and attempt to collect damages and attorney's fees for technical and harmless violations, all while "having the time of their life.[83]

However, even if this Court finds that CBJ cannot be awarded its attorney's fees and costs because it cannot be found to be the prevailing party or that plaintiff brought action in bad faith and for the purpose of harassment pursuant to §1692k(a)(3), this Court should affirm the district court's decision based upon the district court's inherent power.

**III.    The District Court did not abuse its discretion by alternately awarding CBJ its attorney's fees and costs pursuant to its inherent authority.**

1.    <u>Standard of Review</u>

The Eighth Circuit reviews "a district court's imposition of sanctions under its inherent power for an abuse of discretion." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004). "We give substantial deference to the district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved." *Willhite v. Collins*, 459 F. 3d 866, 869 (8th Cir. 2006) (citing *Lee v. First Lenders Ins. Servs., Inc*., 236 F.3d 443, 445 (8th Cir. 2001).

---

[83] Doc. 68 at 30-31.

Appellate Case: 13-3346    Page: 44    Date Filed: 04/02/2014 Entry ID: 4140204

2. <u>Argument</u>

The U.S. Supreme Court has held that "if in the informed discretion of the court" there is "bad-faith conduct" and neither statute "nor the [r]ules are up to the task, the court may safely rely on its inherent power" to sanction such conduct. *Chambers v. Nasco, Inc*., 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "By its nature as a court of justice, the district court possesses inherent powers 'to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases.'" *Wescott Agri-Products v. Sterling State Bank*, 682 F. 3d 1091, 1095 (8th Cir.2012), (quoting *Chambers*, 501 U.S. 32, 43-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R.,* 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

A.    *§1692k(a)(3) does not restrict a Court's inherent power*.

 "A [federal] court has inherent power to award [attorney's] fees based on a litigant's bad faith even without § 1692k(a)(3)." *Marx v. General Revenue Corp*., — U.S. —, 133 S.Ct. 1166, 1175-76 (2013) (citing *Chambers  Inc.,* 501 U.S. 32, 45-46 (1991). Scroggin argues that the district court "had no reason to even invoke its inherent powers as the FDCPA 'was up to the task' and specifically addresses alleged frivolous actions being brought."[84] This argument is flawed. In *Marx*, the Supreme Court expressed that Congress did not intend to displace the Court's

---

[84] Appellant's Brief at 66.

45

inherent authority to award attorney's fees and costs to a party when the other side has acted in bad faith. 122 S.Ct. 1166, 1176  Rather, the Court stated that this provision simply codifies the Court's inherent power. *Id*.

In *Marx*, the Supreme Court was faced with the issue of whether a prevailing defendant under the FDCPA could be entitled to collect its costs pursuant to Rule 54 when a plaintiff did not bring the action in bad faith and for the purposes of harassment pursuant to §1692k(a)(3). *Id.*  The Court found that Congress did not intend to limit the court's power and stated if "Congress intended the second sentence of §1692k(a)(3) to **displace Rule 54(d)(1)**, it could have easily done so by using the word 'only' before setting forth the condition "[o]n a finding by the court that an action. . .was brought in bad faith and for the purpose of harassment." *Id.* at 1177.  Thus, just as if Congress intended the second sentence of § 1692k (a)(3) to **displace the Court's inherent authority**, "it could have easily have done so by using the word 'only' before setting forth the condition [o]n a finding by the court that an action…was brought in bad faith and for the purpose of harassment." Additionally, §1692k (a)(3) does not address the issue of when a plaintiff engages in abusive litigation tactics, but brings a "colorable claim" under the Act or even proves a technical violation. Therefore, in cases such as the one at hand, Congress could not have intended to restrict the court's inherent authority by enacting §1692k (a)(3).

Appellate Case: 13-3346     Page: 46     Date Filed: 04/02/2014 Entry ID: 4140204

### B. The Court's inherent power to award attorney's fees and costs does not depend upon which party prevails.

"A court's inherent power to award attorney fees pursuant to the bad faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." *Lamb Engineering v. Nebraska Public Power,* 103 F. 3d 1422, 1435 (8th Cir. 1997). (citations omitted). This court has adopted the view promulgated by various circuits that, in determining whether to award attorney fees based on the litigant's bad faith, "`[t]he court may consider conduct both during and prior to the litigation, although the award may not be based solely on the conduct that led to the substantive claim.'" *Id.* (citing *McLarty v. United States*, 6 F.3d 545, 549 (8th Cir.1993). Thus, regardless of whether or not CBJ is considered to be the prevailing party of this action, the district court had the inherent authority to award CBJ its attorney's fees and costs.

### C. Scroggin's Free Speech Rights were not violated.

Scroggin contends that the district court abused its discretion by sanctioning him for his online postings even though it had already ruled that he had a First Amendment right to make such postings.[85] However, the district court did not place any restrictions on Scroggin's speech, and thus, his free speech rights were not violated.

---

[85] Appellant Brief at 38.

47

The district court even put Scroggin on notice that all of his postings would come into evidence as statements of the opposing party under Fed.R.Evid. 801(d)(2).[86] Scroggin was free to post whatever he wanted online and he continued to do so at his peril. All of the Scroggin's online postings and emails to opposing counsel were his own statements and were properly admitted into evidence – with no objection. It was naïve for Scroggin to think that none of his statements could be used against him in a lawsuit.

Scroggin brought this lawsuit alleging that he was abused by CBJ's debt collection practices and alleged he suffered emotional distress. Therefore, all of his statements were certainly relevant to the determination of whether Scroggin suffered any actual damages and whether he brought and continued this action in bad faith and for the purposes of harassment.

If this court upholds the award of fees and costs, it will not have a chilling effect on consumers who seek to vindicate their rights when they have actually been abused by debt collectors. Most importantly, it will deter plaintiffs, such as Scroggin, from continuing such vexatious behavior. Scroggin has made clear this will not be his last worthless FDCPA lawsuit. For example, he made the following postings after trial:

---

[86] Doc. 34 at 5

48

I don't plan on that being my last FDCPA case by any stretch of the imagination, and I would roll out the red carpet and welcome this law firm as my opponent in any future cases.[87]

        …

The next case (and we all know there will be) I'll be back with the case number. Don't even know who the Defendant will be or the facts and you already get 20-1 odds if you want to put your money where your mouth is and actually bet not only will I win but will win EVERY claim I make in the lawsuit.[88]

…

And no you've not seen the last of me and heaven help the next poor collector or agency. They are not going to know what hit them. **I'm getting ready to unload on them and use this case as motivation.** They are going to think they have run into the most crazed debtor with actual legal knowledge on the plant. **It's going to be after 9/11** when I was just walking around saying give us somebody to bomb off the face of the earth, anybody, I don't care who they are or what they did or did not do, just send some war planes over and level somebody. That's what we have hear. **I don't care if it's a threat to kill me left on my voice mail or they forget to cross one "I" or one "T" I'm unloading on them and they are going to pay me an insane amount of money or I'll force them right back into that federal courtroom and this time I won't have that attorney and I'll be running the show and you can bet your ass I won't lose and you can bet your ass it will be the most expensive case they have ever tried.**

**I don't care if I kill over dead right after the case is over, my mission will be complete**.

Somebody is getting ready to pay for this and call me anything you want but you know I can pull it off and you know I'll do every dang thing I just said I would. The letters are going out in the mail and the recorder is set up. **God help the next agency that calls or writes because it's just over**. [89]

        …

---

[87] 58-3 at 124, Post 208.

[88] *Id.* at 136, Post 228.

[89] *Id.* at 129, Post 220 (emphasis added).

It's all good though, just like this case you will get the next case number and rest assured I'll be more than making up for it. **Shoot losing this case will probably benefit me on the next one for just the sheer determination I'll have and the make them bleed approach I'll take**.[90]

As can be seen by Scroggin's own words, his abusive conduct is only going to continue. The district court properly sanctioned Scroggin for his vexatious conduct and its ruling should be affirmed.

**IV.    The District Court did not err by alternatively awarding CBJ its accrued costs from the time it made Scroggin an Offer of Judgment pursuant to Fed. R. Civ. P. 68.**

1.    <u>Standard of Review</u>

This Court reviews the district court's granting of costs pursuant to Fed. R. Civ. P. 68 de novo.  *Perkins v. US West Communications,* 138 F. 3d 336, 338 (8th Cir. 1998).

2.    <u>Federal Rule of Civil Procedure 68</u>

Rule 68(d) provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." "This provision shifts the risk of going forward with a lawsuit to the complainant, who becomes exposed to the prospect of liability for a part of the substantial expense of trial, and allows for no discretion in the

---

[90] 58-3 at 132, post 225 (emphasis added).

50

district court to excuse the complainant from the imposition of costs." *Perkins*, 138 F. 3d 336, 338 (8th Cir. 1998).

> 3. <u>CBJ's Offer of Judgment was not a "sham offer."</u>

CBJ is entitled to its post-offer costs pursuant to Rule 68. On June 14, 2013, CBJ made Scroggin an offer of judgment for all of Scroggin's claims, including attorney's fees and costs, in the amount of $2,500.00, which Scroggin did not accept.[91] Under Rule 68, because Scroggin rejected CBJ's offer of judgment and failed to receive a more favorable judgment - he was awarded zero monetary relief-Scroggin must now pay CBJ's post-offer costs.

Scroggin contends CBJ's offer of judgment was a "sham offer" because it did not account for his attorney's fees.[92] This argument is misplaced because Scroggin should have realized the inherent risks of going to trial. Especially since, at the time the offer was made, Scroggin knew all of his online postings would be brought before the jury. Yet, he chose to take that risk and wound up with nothing. After trial Scroggin further explained in a post online:

> I can't say I would or would never do it the same again, but I don't have near the regrets that some of my opponents think I have or hope I have…. I rolled the dice. I took risks and decided I was taking all my online friends along for the ride and I was going to make a show of it and drive the other side crazy.[93]

---

[91] Doc. 58-6.
[92] Appellant's Brief at 68.
[93] Doc. 58-2 at 96, post 156.

Appellate Case: 13-3346    Page: 51    Date Filed: 04/02/2014 Entry ID: 4140204

Scroggin did roll the dice and took that risk. He was awarded nothing by the jury. Therefore, the district court's decision to alternatively award CBJ its costs pursuant to Rule 68 should be affirmed.

## **Conclusion**

The district court's award of attorney's fees and costs should be affirmed.


Respectfully Submitted,


Donn Mixon (76079)
Rebecca Worsham (2009260)
Attorneys for Appellee
P.O. Box 1442
Jonesboro, Arkansas 72403
870.935.8600, 870.935.8622 (fax)
dmixon@mixonlawfirm.com
rworsham@mixonlawfirm.com


By: /s/ Rebecca Worsham
Rebecca Worsham

52

## Certificate of Compliance

1.      This Brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because this brief contains 11,630 words, as counted by Microsoft

Word, excluding the parts of the brief exempted by Fed. R. App. P.32(a)(7)(B)(iii).

2.      This Brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

Brief has been prepared in a proportionally spaced typeface using Times New

Roman 14 point font (Microsoft Word 2010).

/s/  Rebecca Worsham
Rebecca Worsham


## Certificate of Service

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Rebecca Worsham
Rebecca Worsham

Appellate Case: 13-3346     Page: 53     Date Filed: 04/02/2014 Entry ID: 4140204